RECEIVED
IN ALEXANDRIA, LA.

JUN 27 2011

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION


WILLIAM EDWARD STEWART,          CIVIL ACTION
           Petitioner            SECTION "P"
                                 1:08-CV-00909
VERSUS

JOE KEFFER, WARDEN,              JUDGE DEE D. DRELL
           Respondent            MAGISTRATE JUDGE JAMES D. KIRK


REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE


        Before the court is a petition for writ of habeas corpus filed
pursuant to 28 U.S.C. § 2241 by petitioner William Edward Stewart
("Stewart") on June 23, 2008.  Stewart is contesting his 240 month
sentence, imposed in 1999 for his conviction, pursuant to a guilty
plea, to one count of money laundering, 18 U.S.C. §1956(a)(1)(A)(1)
(count 6 of the indictment), in the United States District Court
for the Eastern District of Texas, Beaumont Division.  U.S. v.
Stewart, 1:99-cr-00026-TH-WCR-1 (E.D.Tex. 1999), aff'd, 254 F.3d
1081 (5th Cir. 2001).  Stewart is presently confined in the United
States Penitentiary in Pollock, Louisiana.  Stewart raises the
following grounds for habeas relief:

        1.  Ineffective assistance of counsel under all the
        circumstances, the identified acts or omissions were
        outside the wide range of reasonable professional
        judgment.

2. Stewart pleaded guilty to unknown statutory elements.

3. The Supreme Court announced a new rule which revised the "value of funds laundered" to state "value of laundered funds pursuant to 2S1.1."

The district court dismissed Stewart's petition on initial review (Doc. 11), but the Fifth Circuit Court of Appeals remanded it for reconsideration in light of U.S. v. Santos, 553 U.S. 507, 128 S.Ct. 2020 (2008), noting the district court did not have the benefit of the Fifth Circuit's opinion in Garland v. Roy, 615 F.3d 391 (5th Cir. 2010), at the time Stewart's petition was initially dismissed. Stewart's petition has been referred to the undersigned Magistrate Judge for Report and Recommendation (Doc. 27).

<u>Law and Analysis</u>

<u>Collateral Review</u>

Stewart previously filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 which was denied by the Texas district court in 2003 (Stewart v. U.S., 1:01-cv-00575-TH-WCR), and a motion to eliminate enhancements and reduce sentence which was denied in 2006. Stewart filed the current Section 2241 habeas petition on June 23, 2008.

Section 2255 provides the primary means of collaterally attacking a federal conviction and sentence. Relief under Section 2255 is warranted for errors that occurred at trial or sentencing. Jurisdiction over a Section 2255 motion lies in the sentencing court. Lee v. Wetzel, 244 F.3d 370, 373 (5th Cir. 2001). In this

2

case, that would be the Texas district court.

Section 2241 is correctly used to attack the manner in which a sentence is executed. Jurisdiction over a Section 2241 petition lies in the district where the petitioner is incarcerated. Lee, 244 F.3d at 372. A petition filed under Section 2241 which attacks error that occurred at trial or sentencing is properly construed as a Section 2255 motion. Jeffers v. Chandler, 253 F.3d 827, 829 (5th Cir. 2001), cert. den., 534 U.S. 1001, 122 S.Ct. 476 (2001).

Nevertheless, a Section 2241 petition which attacks custody resulting from a federally imposed sentence may be entertained when the petitioner can satisfy the requirements of the so-called "savings clause" in Section 2255, which states:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

Jeffers, 253 F.3d at 829. Also, Pack v. Yusuff, 218 F.3d 448, 451 (5th Cir. 2000).

A Section 2241 petition is not a substitute for a motion pursuant to Section 2255, and the burden of coming forward with evidence to show the inadequacy or ineffectiveness of a motion under Section 2255 rests squarely on the petitioner. A prior unsuccessful § 2255 motion, or the inability to meet AEDPA's "second or successive" requirement, or other gate-keeping

3

requirements, does not make § 2255 inadequate or ineffective. See Jeffers, 253 F.3d at 829; Tolliver v. Dobre, 211 F.3d 876, 878 (5ᵗʰ Cir. 2000).

The factors that must be satisfied for a petitioner to file a Section 2241 petition pursuant to Section 2255's savings clause are: (1) the petitioner's claim must be based on a retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted of a nonexistent offense; and (2) the claim must have been foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal, or first Section 2255 motion. Jeffers, 253 F.3d at 829-830, citing Reyes-Requena v. United States, 243 F.3d 893 (5ᵗʰ Cir. 2001). The first factor requires that a retroactively applicable Supreme Court decision establish that the petitioner is "actually innocent," or convicted for conduct that did not constitute a crime. The core idea is that the petitioner may have been imprisoned for conduct that was not prohibited by law. Jeffers, 253 F.3d at 830, citing Reyes-Requena, 243 F.3d at 903-904.

In the case at bar, Stewart has shown that he meets the savings clause by citing U.S. v. Santos, 553 U.S. 507, 128 S.Ct. 2020 (2008), in which a plurality opinion redefined the term "proceeds" as it is used the federal money laundering statute, 18 U.S.C. § 1956(a)(1) (the offense to which Stewart pleaded guilty), to mean "profits" rather than "receipts." The Fifth Circuit held

4

in Garland v. Roy, 615 F.3d 391 (5th Cir. 2010), that Santos was previously foreclosed by Fifth Circuit precedent, as required to support a finding that his petition falls within the "savings clause" of the post-conviction relief statute.  The Fifth Circuit further held in Garland that the Supreme Court's decision in Santos is a new decision interpreting a federal statute that substantively defines a criminal offense, and thus is automatically retroactively applicable on collateral review.

Therefore, under the Fifth Circuit's holding in Garland v. Roy, Stewart's 2241 petition, raising a Santos claim, is properly filed pursuant to Section 2255's savings clause.

Money Laundering

All of Stewart's claims can be summed up as a Santos claim, contending he may have a been convicted of a nonexistent offense.

1. Ineffective Assistance of Counsel

First, Stewart contends he had ineffective assistance of counsel.  To establish that his legal representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-pronged test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  He must show that his counsel's performance was both deficient (i.e., that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (i.e., that errors by counsel "actually had

5

an adverse effect on the defense).   Also, U.S. v. Segler, 37 F.3d 1131, 1136 (5th Cir. 1994); Anderson v. Collins, 18 F.3d 1208, 1215 (5th Cir. 1994), and cases cited therein.

Stewart was convicted in 1999 and the Supreme Court decided Santos in 2008.   It is obvious that Stewart's attorney could not have made an argument that did not exist at the time Stewart was convicted.

Stewart also contends he was convicted pursuant to a statute that does not exist-18 U.S.C. § 1956(a)(1)(A)(1).   Stewart is incorrect.   That statute existed at the time he pleaded guilty and still exists, although it is more properly cited as 18 U.S.C. § 1956(a)(1)(A)(i).

Since Stewart cannot show his counsel's performance was deficient for failing to make a Santos argument, Stewart cannot prove he had ineffective assistance of counsel.

This ground for relief is meritless.

## 2. Santos Argument

Next, Stewart contends his guilty plea was invalid because he pleaded guilty to a nonexistent offense.[1]   Essentially, Stewart is

---

[1] Stewart also argued that he pleaded guilty to unknown statutory elements due to the fact that the statute cited in the charge did not exist.  However, as discussed above, that argument is meritless.
Stewart further points out that the Supreme Court's  new rule in Santos is now incorporated in the Sentencing Guidelines §2S1.1(a), which stated "value of funds laundered," to now state "value of laundered funds pursuant to 2S1.1."

6

arguing he pleaded guilty to a now non-existent offense, so his conviction should be reversed.

In <u>U.S. v. Santos</u>, 553 U.S. 507, 514, 128 S.Ct. 2020, 2025 (2008), in a plurality opinion with a concurrence by Justice Stevens, the Supreme Court defined the term "proceeds" as it is used in the federal money laundering statute, 18 U.S.C. § 1956(a)(1) (the offense to which Stewart pleaded guilty); the court found that, in some cases, "proceeds" means "profits" rather than "gross receipts." Both the plurality opinion and Justice Stevens' concurrence explained that a "merger problem" results any time the definition of "proceeds" as "receipts" enables the money-laundering charge to rely upon the same "transaction" as the "predicate crime," and thus defined "proceeds" as "profits" for purposes of the money-laundering statute where there is a merger problem. <u>Santos</u>, 553 U.S. at 524, 128 S.Ct. at 2032-33.[2] Although the plurality intended to adopt the definition of "proceeds" as "profits" in all cases, Justice Stewart's concurrence narrowed that holding to only where there is a merger problem or, if there is no

_____

[2] Since <u>Santos</u>, Congress has modified the federal money laundering statutes to expressly define "proceeds" as gross-receipts in all cases, effectively superseding the rule of law established by the plurality and concurrence in <u>Santos</u>. See 18 U.S.C. § 1956(c)(9), 18 U.S.C. § 1957(f)(3); Pub.L. No. 111-21, § 2(f)(1), 123 Stat. 1618. However, ex post facto concerns prevent this Court from considering the statutory change in the context of this case. See <u>U.S. v. Johnson</u>, 405 Fed.Appx 746, 749 n.3 (4th Cir. 2010), cert. den., 2011 WL 1628010, __S.Ct.__ (U.S. 5/31/2011).

merger problem, where the legislative history of the money laundering statute indicates that proceeds should be defined as profits in certain types of cases.

In <u>Garland v. Roy</u>, 615 F.3d 391 (5th Cir. 2010), Garland also filed a Section 2255 motion contesting his convictions for money laundering under the holding in <u>Santos</u>. The Fifth Circuit held that <u>Santos</u> applies retroactively on post-conviction review pursuant to the "savings clause" of 28 U.S.C. § 2241, and remanded for a determination as to whether Garland was convicted of a non-existent offense. The Fifth Circuit further stated that the type of claim presented in <u>Garland</u> and in this case was foreclosed under the court's pre-<u>Santos</u> cases, thus satisfying the second <u>Reyes-Requena</u> factor. <u>Garland</u>, 615 F.3d at 397. Finally, the Fifth Circuit quoted <u>Marks v. United States</u>, 430 U.S. 188, 193, 97 S.Ct. 990 (1977), stating, "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'"

In <u>Garland</u>, 615 F.3d at 401-402, the Fifth Circuit adopted Justice Stevens' concurrence in <u>Santos</u> and held that the definition of "proceeds" in the money-laundering statute, 18 U.S.C. § 1956, must be determined through a bifurcated analysis: (1) whether, when "proceeds" are defined as "gross receipts" rather than "profits,"

8

the defendants would face the "merger problem," and (2) if there is a merger problem, then "proceeds" must be defined as "profits," but if there is no "merger problem," then the court should start with the presumption that "proceeds" should be defined as "gross receipts," then look to the legislative history of the money-laundering statute, 18 U.S.C. § 1956, to challenge this presumption. Only if there is adequate legislative history to rebut this presumption, indicating that "proceeds" should be defined as "profits," should the Court conclude that Congress meant for that narrower definition to apply.

The "merger problem" occurs when a defendant could be punished for the same "transaction" under the money laundering statute as well as under another statute, namely the statute criminalizing the "specified unlawful activity" underlying the money-laundering charge. <u>Garland</u>, 615 F.3d at 402.

## The Bifurcated Analysis

In the case at bar, Stewart pleaded guilty and was sentenced on one count of money laundering pursuant to 18 U.S.C. § 1956(a)(1). The underlying unlawful activity was wire fraud. Stewart and his co-defendants were charged with falsely representing to potential investors that they operated an investment firm known as Allied Investment Company, of which Stewart was the CEO. Defendants were charged with fraudulently inducing investors to place funds with Allied Investment Company.

However, instead of investing the funds, the defendants used the investment funds for personal expenses and to make purchases and investments for defendants' personal benefit or gain, and to pay purported "earnings" to earlier investors, thereby lulling investors into believing their investments had been made and performing as promised. The investors' funds were sent by the investors to Allied Investment Company by depositing them in First Bank & Trust, Beaumont, Texas. Eventually the investors' funds were transferred by defendants to other accounts held by Allied Investment Company and AAA Bookkeeping in the Metro Bank in Houston, Texas.

The count to which Stewart pleaded guilty, count six of his indictment, charged Stewart with money laundering for the purpose of promoting defendants' unlawful activity, via a wire transfer of $315,000 of investor funds from an account located at First Bank & Trust, Beaumont, Texas to an Allied Investment Company account in Metro Bank, Houston, Texas, on about July 30, 1998, in violation of 18 U.S.C. 1956(a)(1)(A)(1).

To prove wire fraud, 18 U.S.C. § 1343, the government must show a scheme to defraud, the use of wire communications in furtherance of the scheme, that the communications were material, and the defendant's specific intent to participate in the scheme. Success of the scheme is not an element of the crime. U.S. v. Valencia, 600 F.3d 389, 426 (5th Cir. 2010), cert. den., 131 S.Ct.

285 (U.S. 2010), and cases cited therein. In Stewart's case, wire fraud was charged in counts 1 through 5, which took place on July 1, 1998, July 3, 1998, July 6, 1998, and July 27, 1998. The money laundering to which Stewart pleaded guilty took place on July 30, 1998.

The money laundering "promotion" statute, 18 U.S.C. § 1956(a)(1)(A)(i), is violated by "[w]hoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity... with the intent to promote the carrying on of specified unlawful activity." To sustain a conviction under the money laundering promotion statute, the Government must show that the defendant: (1) conducted or attempted to conduct a financial transaction, (2) which the defendant then knew involved the proceeds of unlawful activity, (3) with the intent to promote or further unlawful activity.[3] U.S. v. Brown, 553 F.3d 768, 782 (5th Cir. 2008), cert. den., 129 S.Ct. 2812 and 130 S.Ct. 246 (U.S. 2009). Money laundering covers the removal of profits from criminal activity, and not the mere payment of

---

[3] To establish the proceeds element under Santos' "profits" interpretation, the prosecution need only show that a single instance of specified unlawful activity was profitable and gave rise to the money involved in a charged transaction. What counts is whether the receipts from the charged unlawful act exceeded the costs fairly attributable to it. Brown, 553 F.3d at 784.

11

crime-related expenses. The crime of money laundering promotion is aimed not at maintaining the legitimate aspects of a business nor at proscribing all expenditures of ill-gotten gains, but only at transactions which funnel ill-gotten gains directly back into the criminal venture. <u>Brown</u>, 553 F.3d at 785-786.

At Step 1 of the analysis in the case at bar, Stewart pleaded guilty to the money laundering promotion statute, 18 U.S.C. § 1956(a)(1)(A)(i), based on an underlying felony offense of wire fraud. Obviously, the scheme to defraud was to fraudulently induce investors to send money to defendants's Allied Investment Company. The wire fraud was complete when defendants (including Stewart) induced investors to wire money from their bank accounts to First Bank & Trust in Beaumont, Texas on July 1, 1998, July 3, 1998, July 6, 1998, and July 27, 1998. The money laundering was alleged to have occurred on a different date, July 30, 1998, when defendants (including Stewart) moved $315,000 to the Allied Investment Company account at Metro Bank in Houston, Texas in order to promote the fraudulent investment business.

Stewart's money laundering activity was clearly subsequent to the wire fraud activity. Therefore, there is no overlap between the acts of wire fraud and the money laundering activity that occurred subsequent to the completed wire frauds. The crime of wire fraud was complete no later than when the victims wired their money to First Bank & Trust in Beaumont. The promotional money

12

laundering was initiated when defendants sent that money to an Allied Investment Company account, apparently to be spent lulling the current investors and inducing new investors to send their money to defendants. Since the basis of the money laundering charge to which Stewart pleaded guilty was a separate financial transaction from those which formed the bases of the wire fraud charges, there is no merger problem. Contrast, <u>U.S. v. Crosgrove</u>, 637 F.3d 646 (6th Cir. 2011).[4]

Since Stewart's money laundering charge relates to a distinct down-stream monetary transaction which occurred after the underlying unlawful activity (wire fraud) was fully accomplished, Stewart was not charged with two different crimes for the same behavior. Therefore, there is no merger problem. <u>U.S. v. Calhoun</u>, 2011 WL 1791182, *12 (S.D.Miss. 2011), and cases cited therein. Compare, <u>United States v. Atiyensalem</u>, 367 F. Appx. 845, 846 (9th Cir. 2010) (finding Santos inapplicable because defendant "was not charged with any other crime that would have resulted in his being convicted for two different crimes for the same behavior").

At Step 2 of the analysis in this case, the court must

---

[4] In <u>Crosgrove</u>, 637 F.3d at 654-655, the court found a merger problem where the payments Crosgrove received for his services (as an attorney and claims adjuster for the fraudulent insurance company) were the only basis for upholding Crosgrove's conviction for conspiracy to commit money laundering, and the same payments were also listed in the indictment as overt acts in furtherance of the mail/wire fraud conspiracy. Because of this merger problem, the Sixth Circuit defined "proceeds" under the money laundering statute as "profits."

determine whether there is adequate legislative history to rebut the presumption that "proceeds" should be defined as "gross receipts."

A habeas petitioner has the burden of proving facts in support of his claim. Unsupported conclusory allegations do not warrant habeas relief. <u>Uresti v. Lynaugh</u>, 821 F.2d 1099, 1103 (5th Cir. 1987); <u>Wilson v. Butler</u>, 813 F.2d 664, 671 (5th Cir.), on rehearing, 825 F.2d 879, 881 (5th Cir. 1987), cert. den., 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1021 (1988); <u>United States v. Cockrell</u>, 720 F.2d 1423, 1427 (5th Cir. 1983), cert. den., 467 U.S. 1251 (1984); <u>United States v. Jones</u>, 614 F.2d 80, 82 (5th Cir.), cert. den., 446 U.S. 945 (1980). Stewart has not identified, and this court has not found, any legislative history which supports a definition of proceeds as net profits in the context of money laundering based on wire fraud.[5]   Therefore, the "proceeds" of Stewart's illegal

---

[5] The Second Circuit discussed the legislative history of the money laundering statute in <u>U.S. v. Stavroulakis</u>, 952 F.2d 686, 691-692 (2d Cir.), cert. den., 504 U.S. 926, 112 S.Ct. 1982 (1992), as follows:

"The legislative history, while scant, supports our view that the focal point of the statute is the laundering process, not the underlying unlawful conduct that soiled the money. Congress did not submit any reports with the Anti-Drug Abuse Act of 1986, which contained the Money Laundering Control Act of 1986. See 1986 U.S.Code Cong. & Admin.News 5393. However, two related reports provide some insight into the purpose behind the money laundering statute. See S.Rep. No. 433, 99th Cong., 2d Sess. (1986) ('Senate Report'); H.R.Rep. No. 855, 99th Cong., 2d Sess. (1986) ('House Report').

"Because individuals who are willing to conceal the

14

activity should be defined as "gross receipts."

Since Stewart has not carried his burden of proving that "proceeds" should be defined of "profits" in his case, Stewart's petition for writ of habeas corpus should be denied.

### 3. Sentencing Guidelines

Finally, Stewart contends that U.S.S.G. § 2S1.1(a) was revised in 2001 for sentence calculation purposes from the "value of the funds" to the "value of the laundered funds." Stewart argues this change affects the calculation for sentencing purposes, since only the fund actually laundered should be considered for sentencing. citing U.S. v. Paley, 442 F.3d 1273 (11th Cir. 2006).

This claim is not based on a retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted of a nonexistent offense, and that was brought within one year of the Supreme Court's decision. Jeffers, 253 F.3d at 829-830; 28 U.S.C. §2255(f)(3). Therefore, review of Stewart's

---

source of illegal booty have become so necessary to the secrecy that organized-crime figures and drug dealers cherish, Congress decided to criminalize the laundering activity. See Senate Report at 2; House Report at 7-8. The statute was designed to create a new federal crime, rather than to further penalize the underlying criminal conduct. See Senate Report at 1-2; House Report at 7. In 1988, Congress added subsection (a)(3) to the money laundering statute. At that time, Senator Biden emphasized that the purpose of this amendment was to enhance the ability of law-enforcement officers 'to obtain evidence necessary to convict money launderers.' 134 Cong.Rec., S 17365 (daily ed. Nov. 10, 1988) (statement of Sen. Biden) *692 (emphasis added)."

15

sentencing guidelines claim is barred under the Savings Clause of Section 2255.

### Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Stewart's Section 2241 petition for writ of habeas corpus be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2255 proceedings for the United States District Courts, this court must

issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED in Alexandria, Louisiana on the 27th day of June, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE